# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

—————————

No. 96-2655EM

—————————

St. Louis Trimming, Inc.,      *
     *
         Appellant,      *
     *   On Appeal from the United
      v.      *   States District Court
     *   for the Eastern District
     *   of Missouri.
American Credit Indemnity      *
Company, a company of the      *   [To Be Published]
Dun & Bradstreet Corporation,      *
     *
         Appellee.      *

—————————

Submitted: April 17, 1997

Filed: May 20, 1997

—————————

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and FAGG, Circuit Judges.

—————————

PER CURIAM.

The question presented is whether a certain loss is covered by a policy of credit insurance issued by the defendant, American Credit Indemnity Company, to the plaintiff, St. Louis Trimming, Inc. The loss occurred before the premium applicable to the risk in question was paid. The District Court[1] construed a provision of the policy to bar coverage under these circumstances. The District

———————————————

[1]The Hon. Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

Court has filed a thorough published opinion. St. Louis Trimming, Inc. v. American Credit Indem. Co., 924 F. Supp. 99 (E.D. Mo. 1996). We have nothing of significance to add. We agree with the well-reasoned opinion of the District Court.

The dissenting opinion argues that American Credit's conduct in accepting late payments of premiums amounts to a waiver of the policy provision in question, or estops American Credit to rely on the provision. For the reasons given at some length in the opinion of the District Court, we agree that the doctrines of waiver and estoppel are not available here, because their use would allow the creation of coverage where, under the clear language of the policy, none exists. We point out, in addition, that the conduct of the insurer that is relied upon does not, in any event, amount to a waiver or estoppel. There is no past instance of the insurer's paying a loss with respect to which the premium had not been paid at the time the loss occurred. Late payments of premiums were accepted, but in no case did the insurance company pay a loss that had occurred before the relevant premium payment.

The insurance company is instructed to return to St. Louis Trimming, Inc., the premiums attributable to the loss that occurred in this case. On this understanding, the judgment is

Affirmed.

Floyd R. Gibson, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent. Unlike the majority, I am unable to agree with the district court that, as a matter of law, the insurance policy issued by American Credit Indemnity Company ("American Credit") to St. Louis Trimming ("SLT") provided no

coverage for the loss in question. Consequently, I would reverse the district court's entry of summary judgment dismissing counts one through three of SLT's Complaint. Nonetheless, because I am satisfied that SLT did not plead a viable cause of action for conversion, I concur in the portion of the majority's opinion that affirms the dismissal of count four.

Although I write this dissent in the spirit of brevity exemplified by the majority's decision, I do find it necessary to succinctly elaborate upon certain facts supported by the record. In the course of its business, SLT regularly extends credit to its clientele. To protect itself against the inevitable risk of a customer's default, the company on a yearly basis procures credit insurance coverage. From 1985 until 1996, SLT insured its risk through policies sold by American Credit.

American Credit required SLT to tender both yearly and monthly premiums for its credit insurance. The yearly premiums were due annually on July 31, the day on which coverage under the previous policy expired, but the record shows that SLT was typically late in making these payments. Between 1989 and 1994, SLT did not remit a timely premium, and on only one occasion during that span of time did the company tender payment prior to August 25. In fact, the average period of delinquency was 58 days, with the longest lapse being a payment in 1990 that was 108 days overdue. Notwithstanding a clause in the relevant policies which granted American Credit the right to avoid coverage for "any loss occurring prior to the payment of the premium," the insurer never objected to SLT's delinquency, and it never threatened to cancel a policy due to late payments.

The monthly premium fluctuated, and it was factored on the basis of a report submitted by SLT showing the amount of credit it

had advanced in the previous month. American Credit would arrive at a base price for the premium by multiplying these total monthly sales by a variable rate. The company would then calculate the total amount due by adding an extra $2.50 for each $1,000 of coverage applicable to "extraordinary coverage," or high risk, accounts.

By check dated November 2, 1994, which was 94 days after the July 31 due date, SLT remitted the yearly premium for the 1994-1995 policy. On that same day, House of Fabrics, Inc., one of SLT's debtors, filed for voluntary bankruptcy protection in the United States Bankruptcy Court for the Central District of California. One day later, John Gorsuch, an American Credit official, notified SLT of this event, which triggered coverage for the high risk House of Fabrics account. On November 8, 1994, American Credit deposited SLT's yearly premium check, and on November 14 of that year SLT filed a claim for $100,000 of covered loss caused by the House of Fabrics insolvency.

Meanwhile, American Credit, in the periodic invoices mandated by the policy, continued to charge $250 per month for insurance on the House of Fabrics account. The insurer, however, denied SLT's claim on January 18, 1995; according to American Credit, there could be no indemnity because SLT sustained the House of Fabrics loss prior to payment of the premium due under the terms of the contract. Still, American Credit proceeded to bill SLT for monthly premiums on the insolvent debtor's account. In all, American Credit charged at least $1,500 in premiums for the House of Fabrics account after the loss occurred, $1,000 of which was demanded after the insurer's denial of the claim. To date, American Credit has not refunded these amounts to SLT.

In my view, these facts present a most egregious example of an insurance company's obstinate refusal to pay benefits despite its blissful willingness to accept and retain premiums directly attributable to the loss suffered by the insured.  As I see it, American Credit, by consistently accepting yearly premium payments that were seriously overdue, with nary a word to SLT about its intention to deny any losses occurring before the remittance date, waived its right to rely on the policy provisions it invokes in this case.  Alternatively, we should hold that American Credit is estopped from relying on those provisions.

I fully recognize that the principles of waiver and estoppel "are not available to bring risks within the coverage of an insurance policy that are not covered by its terms or are excluded from that policy."[1]  Holland Corp. v. Maryland Cas. Co., 775 S.W.2d 531, 534-35 (Mo. Ct. App. 1989). Thus, under Missouri law, "although waiver and estoppel may prevent an insurer from asserting a defense to coverage otherwise provided by a policy, waiver or estoppel cannot establish coverage where none existed before."  State ex rel. Shelter Mut. Ins. Co. v. Crouch, 714 S.W.2d 827, 829 (Mo. Ct. App. 1986).  The critical distinction, as correctly noted by the district court, is between "waiver of premium payment provisions, which may occur, and waiver of substantive coverage provisions, which may not." St. Louis Trimming, Inc. v. American Credit Indem. Co., 924 F. Supp. 99, 101 (E.D. Mo. 1996).  While the district court, and the majority by acquiescence, acknowledged that

---

[1]This precept has been described "as a 'majority rule' that is eroding."  16B John Alan Appleman & Jean Appleman, Insurance Law and Practice § 9090 (Supp. 1996-97).  "[D]espite the lip service given to [this rule], . . . the courts, in fact, frequently do extend the coverage of a policy by the application of [waiver or estoppel]."  Id. § 9090, at 576 n.* (1981), quoted in State ex rel. Shelter Mut. Ins. Co. v. Crouch, 714 S.W.2d 827, 829 n.* (Mo. Ct. App. 1986).

the policy language presently in dispute "admittedly sits close to the intersection of these concepts," id. it decided that the pertinent clauses should be likened to substantive coverage provisions that cannot be waived, see id. It is on this point that I part ways with the reasoning of the district court and the majority.

A credit insurance policy, virtually by definition, provides protection against financial injury occasioned by the insolvency of an insured's debtor. Bearing this in mind, it seems to me fundamental that the loss claimed by SLT, which was precipitated by the bankruptcy of a company to which SLT had advanced credit, stands as a grand example of the exact sort of risk American Credit's policy was designed to cover. Indeed, as far as I can tell, American Credit admits that the policy would have compelled reimbursement for this loss had SLT paid the yearly premium on July 31 (or, for that matter, on any date prior to the House of Fabrics bankruptcy). Given these facts, I am at a loss to discern how waiver of the provisions trumpeted by American Credit, which merely afforded the insurance company an opportunity to escape liability for already insured losses, can be construed to "establish coverage where none existed before." Crouch, 714 S.W.2d at 829. The language at issue does nothing more than provide a defense against claims that are otherwise properly payable under the policy, and it is thus amenable to the principles of waiver and estoppel.[2]

With the availability of waiver or estoppel established, I would hold, under both of these doctrines, that American Credit,

---

[2]I might note that a decision consistent with these observations would prevent legally savvy insurance companies from forever avoiding application of waiver and estoppel by "incorporat[ing] premium payment into an exclusion from coverage." St. Louis Trimming, 924 F. Supp. at 101.

-6-

through its longstanding acceptance of delinquent payments and its indefensible practice of charging premiums on the House of Fabrics account <u>even after it had denied SLT's claim</u>, is foreclosed from relying upon the forfeiture provisions under discussion. I understand, however, that my analysis has failed to carry the day. That being so, I concur in the majority's decision to require reimbursement of the premiums attributable to the House of Fabrics account. To be sure, these premiums must be returned to SLT because, under the majority's formulation of the case, they were not in any way earned.

As a matter of fairness and conscience, an insurance company following this practice of proceeding to accept late premium payments should, at least, insert in bold type in its policies that there is no coverage unless premiums are paid on time or until after premiums are paid and accepted.

A true copy.

      Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.